United States District Court
Southern District of Texas
**ENTERED**
August 29, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LUANNA ROXANNE LOZANO TELLO, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIV. NO. 7:23-cv-00399 |
| | § | |
| MARTIN O'MALLEY, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| Defendant.[1] | § | |

## REPORT & RECOMMENDATION

Plaintiff, Luanna Roxanne Lozano Tello, proceeding through her Counsel, Attorney Justin
S. Raines, (Dkt. No. 1 at 1), initiated this action by filing a Complaint for Review of a Denial of
Social Security Disability Insurance benefits and Supplemental Security Income benefits pursuant
to 42 U.S.C. §§ 405(g), 1383(c)(3). (Dkt. Nos. 1 at 1, 1-1). This matter has been referred to the
undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b).

On November 15, 2023, the undersigned granted Plaintiff permission to proceed *in forma
pauperis*. (Dkt. No. 3). On March 6, 2024, Plaintiff filed a motion for summary judgment
("Motion for Summary Judgment to Reverse or Remand Administrative Agency Decision and
Memorandum Brief") (Dkt. No. 8). On April 5, 2024, Defendant filed a cross-motion for summary
judgment ("Defendant's Cross-Motion for Summary Judgment") (Dkt. No. 9) and a brief in

---

[1] On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security
Administration, as such, the District Clerk's Office is hereby advised to substitute Commissioner O'Malley
as the named defendant. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in
accordance with this subsection shall survive notwithstanding any change in the person occupying the office
of Commissioner of Social Security or any vacancy of such office.").

support of said motion (Dkt. No. 10).  After review of said filings, this case is ripe for disposition on the record.

Plaintiff claims the Commissioner of the Social Security Administration (SSA) (the "Commissioner") improperly decided she is not disabled under the Social Security Administration's definition. (Dkt. No. 1 at 2, ¶ 10).  Plaintiff argues the Administrative Law Judge ("ALJ") failed to consider any medical opinions in determining the Plaintiff's residual functional capacity ("RFC"), improperly weighed the medical opinions of record, and created the RFC on her own with no basis in the medical records.  (Dkt. No. 8).

After a careful review of the record and relevant law, the undersigned recommends Defendant's Cross-Motion for Summary Judgment (Dkt. No. 9) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 8) be **DENIED**.

## PROCEDURAL BACKGROUND

### I.  Background

Plaintiff is a 29-year-old female who was previously employed in various industries, such as sanitation, night auditor, and at mental health group homes. (Dkt. No. 8 at 3).  On August 10, 2017, Plaintiff requested disability benefits due to posttraumatic stress disorder ("PTSD"), anxiety, and depression. *Id.*  Plaintiff's claim arose from a physically, mentally, sexually, and emotionally abusive relationship spanning ten years and giving rise to her symptoms. *Id.* at 3.  Plaintiff claims her disability onset date was February 17, 2017. *Id.*

### II.  Administrative Proceedings

On March 15, 2022, Plaintiff was scheduled for a hearing before an ALJ, at this time, the hearing was rescheduled to provide Plaintiff an opportunity to obtain representation.  (Dkt. No 8

2

at 8). On September 29, 2022, Plaintiff had her official hearing before an ALJ and decided to proceed without representation. *Id.*[2]

At the hearing, Plaintiff testified to the following: Plaintiff originally lived in Minnesota, but relocated to Texas in March of 2020, where she sought medical care for her conditions. (Dkt. No. 7 at 78). Plaintiff graduated high school and attended some college but did not receive a degree. *Id.* at 81. At the time of the hearing, Plaintiff was taking criminal justice courses from Colorado Technical University, where her courseload was reduced because she could not keep up.[3] *Id.* at 82. Plaintiff did not receive any special accommodations in high school. *Id.* at 83. From 2016-2017, Plaintiff attempted to work at a behavioral mental health facility but was put on leave due to a "mental health breakdown" that occurred during work hours. *Id.* at 85. In 2018, Plaintiff was employed for about 6 months at Safe Avenues, a shelter where she worked as an advocate. *Id.* at 84. Plaintiff was let go due to her "emotional problems." *Id.* Plaintiff also worked at Fourth Avenue Homes where she was a program coordinator, which entailed ensuring individuals with developmental disabilities were taken care of. *Id.* at 86. Before the alleged onset of Plaintiff's disability, from 2007-2011, Plaintiff worked a machine operator job. *Id.* at 87.

Plaintiff testified she was "scared of people" and had recurring thoughts of harm coming her way. *Id.* at 89. Plaintiff could not tolerate criticism and her sleep habits were irregular. *Id.* Plaintiff's ex-boyfriend and ex-husband were both abusive to her. *Id.* at 91. Plaintiff initially attended Tropical Texas Behavioral Health for treatment but was discharged for failing to follow through. *Id.* at 92. At some point, Plaintiff reinitiated treatment and was prescribed medications,

---

[2] Plaintiff's hearings before an ALJ were rescheduled multiple times due to various circumstances, and in the interest of clarity, those specific instances and circumstances are not included in this brief recitation. *See* Dkt. No. 10 at 3 n. 2.

[3] Plaintiff also noted this was her second time enrolling because she was dropped due to attendance and failing her courses in the past. *See* Dkt. No. 7 at 82-83.

but was not taking them at the time of the hearing. *Id.* at 94. Due to Plaintiff's domestic abuse, Plaintiff testified she suffered partial hearing loss and was losing vision in one eye. *Id.* at 97. Plaintiff feels tired and if faced with stress would rather be asleep. *Id.* Plaintiff has a driver's license. *Id.* at 93.

The vocational expert ("VE"), Daniel Simone, testified at the hearing. (Dkt. No. 7 at 98-103). The VE testified that in competitive employment, 15% or less off task time and one absence a month on a regular basis would be tolerated. *Id.* at 103. The VE further testified that considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff would be able to perform other work. *Id.* at 100-103. Particularly, Plaintiff could find work as a kitchen helper (DOT Code 318.687-010), a hospital cleaner (DOT 323.687-022), and routing clerk (DOT 222.687-022).[4] *Id.*

Notably, after the hearing, the ALJ ordered additional testing to assess Plaintiff's mental state before reaching a decision. *Id.* at 104. After considering the record, including this additional examination, and the VE's testimony, the ALJ concluded Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is not disabled. *Id.* at 53.

### III. ALJ Opinion

On March 27, 2023, the ALJ determined Plaintiff was not disabled. (Dkt. No. 7 at 53). The ALJ followed the five-step sequential evaluation process.[5] At step one, the ALJ found that

---

[4] DOT is a noted abbreviation for *Dictionary of Occupational Titles*. "The Department of Labor promulgated the DOT to provide 'standardized occupational information to support job placement activities.'" *Jacquelyn S. v. Comm's of Soc. Sec. Admin.*, No. 3:18-CV-01022-L-BT, 2019 WL 4359412, at *6 n.3 (N.D. Tex. Aug. 27, 2019) (citing Dep't of Labor, D.O.T. at xv (4th ed. 1991)), *report and rec. adopted*, No. 3:18-CV-1022-L, 2019 WL 4318885 (N.D. Tex. Sept. 12, 2019).

[5] The five-step process is as follows:

Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that her

work after the alleged onset date qualified as an unsuccessful work attempt. (Dkt. No. 7 at 31-32).

At step two, the ALJ found Plaintiff's severe impairments were major depressive disorder,

generalized anxiety disorder, and PTSD. *Id.* at 32. At step three, the ALJ found Plaintiff's

impairment failed to meet or equal a listed impairment for presumptive disability under the

regulations. *Id.* at 33. After the third step, the ALJ found Plaintiff's residual functional capacity

("RFC") included the ability to perform a full range of work at all exertional levels but with the

following non-exertional limitations:

> [S]he is capable of understanding, remembering, and carrying out simple
> instructions in a work environment that is not fast paced, meaning the pace of
> productivity is not dictated by an external source over which the individual has no
> control such as on an assembly line or conveyor belt. The claimant can tolerate
> occasional interaction with coworkers and supervisors; but should have no
> interaction with the public. She can adapt to occasional changes in work routine.

---

(1) a claimant who is working, engaging in a substantial gainful activity,
will not be found to be disabled no matter what the medical findings are;
(2) a claimant will not be found to be disabled unless he has a "severe
impairment"; (3) a claimant whose impairment meets or is equivalent to
an impairment listed in Appendix 1 of the regulations will be considered
disabled without the need to consider vocational factors; (4) a claimant
who is capable of performing work that he has done in the past must be
found "not disabled"; and (5) if the claimant is unable to perform his
previous work as a result of his impairment, then factors such as his age,
education, past work experience, and residual functional capacity must be
considered to determine whether he can do other work.

*Zimmerman v. Astrue*, 288 F. App'x 931, 933-34 (5th Cir. 2008) (citing *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. §§ 404.1520(a)-(e), 416.920(a)-(e) (describing the five steps)). A finding that an individual is disabled or, alternatively, is not disabled at any step is "conclusive" and ends the review. *Zimmerman*, 288 F. App'x. at 934 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). After step three, there is an assessment of a plaintiff's residual functional capacity (RFC), which is basically an assessment of an individual's ability to work, prior to going to the last two steps. SSR 96-8p, 1996 WL 374814, at *1 (July 2, 1996). "This assessment of RFC is used at Step 4 ... to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience." *Id.* at *2.

*Id.* at 40. Then, at step four, the ALJ found Plaintiff could not perform her past relevant work, including as a resident supervisor, machine cleaner, night auditor, and resident care aide. *Id.* at 51. At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 52. Specifically, the ALJ noted Plaintiff would be able to work as a kitchen helper, hospital cleaner, and routing clerk.[6] Consequently, the ALJ found Plaintiff is not under a "disability" as defined by the Social Security Act from the alleged onset date of February 17, 2017, through the date of this decision. *Id.* at 53.

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 8, 2023. (Dkt. No. 10 at 4); *Sims v. Apfel*, 530 U.S. 103, 107 (200). Subsequently, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g).

## SUMMARY OF THE PLEADINGS

On March 6, 2024, Plaintiff filed a Motion for Summary Judgment to Reverse or Remand Administrative Agency Decision and Memorandum Brief ("Plaintiff's MSJ") raising three issues. (Dkt. No. 8 at 1). First, Plaintiff argues that the ALJ erred by failing to evaluate psychologist Mr. Carroll's opinions and not including them in the RFC. *Id.* Second, Plaintiff argues the ALJ rejected all medical opinions and instead concocted an *ipse dixit*, meaning the ALJ reached her decision without any evidence or support. *Id.* Third, Plaintiff argues the ALJ erred by substituting her lay opinions for those of consultative psychologist Dr. Tovar. *Id.* As such, Plaintiff requests the Court reverse and remand the case for a new decision.

On April 5, 2024, Defendant filed a cross motion for summary judgment (Dkt. No. 9) and Defendant's Brief in Support (Dkt. No. 10). Defendant argues the ALJ complied with all

---

[6] *See supra* n.4.

regulatory requirements in evaluating the medical opinions of record and of the consultative examiner, and that substantial evidence supports the ALJ's RFC finding. *Id.* at 5, 12, 16. Defendant requests the Court grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment and dismiss the complaint with prejudice.

**APPLICABLE LAW AND ANALYSIS**

### I.  Standard of Review

Summary judgment is proper when the record reflects "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Although "[t]he same standard rules governing summary judgments apply to a review of an administrative denial of social security benefits," appellate review of social security matters is limited by 42 U.S.C. § 405(g).[7] *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Tex. 2003) (citations omitted).

Once the movant for summary judgment presents "a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). Further, "[w]hen parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Rangel v. Saul*, No. 5:19-CV-31, 2020 WL 3546875, at *2 (S.D. Tex. Mar. 8, 2020) (citing *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (internal citation and quotation marks omitted)). Each party carries the burden of demonstrating no genuine issue of material fact exists and if there is

---

[7] Particularly, when reviewing an administrative action, the Court is limited to the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981) ("No evidence external to the administrative record is generally admissible in reviewing an administrative action pursuant to 42 U.S.C. [§] 405(g).").

none and one of the parties should prevail as a matter of law, the court may render summary judgment. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

A district court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). However, review of the Commissioner's decision is limited to whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)) (internal quotation marks omitted); 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). The threshold for providing sufficient "substantial evidence" is not high. *Id.* "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Bowen*, 833 F.2d 509, 511 (5th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court may not reweigh the evidence nor substitute its own judgment for that of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). In other words, the substantial evidence standard will be met unless there is a complete "absence of credible choices or no contrary medical evidence." *Courtney B. v. Kijakazi*, No. 4:19-CV-04525, 2021 WL 4243512, at *2 (S.D. Tex. Sept. 17, 2021) (quoting *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009)).

"While substantial deference is afforded the Commissioner's factual findings, legal conclusions and claims of procedural error are reviewed *de novo*." *Gorgol v. Berryhill*, No. SA-17-CA-109-HJB, 2017 WL 8181018, at *2 (W.D. Tex. Oct. 18, 2017) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003) and *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *4 (5th Cir. Aug. 19, 2005)).

## II. The ALJ's Consideration of Mr. Carroll's Opinion

The ALJ has the sole responsibility of interpreting the medical evidence and weighing the competing evidence in determining RFC. *Bishops v. Saul*, No. 3:19CV9 CWR-LRA, 2020 WL 2310405, at *4 (S.D. Miss. Feb. 20, 2020) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). In so doing, the ALJ may reject an opinion, in whole or in part, when the rest of the evidence supports a contrary conclusion. *Id.* at *4 (citing *Kneeland v. Berryhill*, 850 F.3d 739, 760 (5th Cir. 2017)). But the ALJ must provide a specific and legitimate reason for rejecting such expert opinions. *Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *10 (N.D. Tex. May 25, 2010) (citing *Gonzalez v. Barnhart*, No. SA-05-CA-0282-RF, 2006 WL 1875912, at *4 (W.D. Tex. June 30, 2006)), *report and recommendation adopted,* No. 4:08-CV-657-A, 2010 WL 2891075 (N.D. Tex. July 20, 2010).

Pursuant to 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5), the SSA evaluates all medical sources based on five factors: (1) supportability[8], (2) consistency[9], (3) relationship with claimant (considering length of treatment relationship, frequency of examinations, purpose of

---

[8] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[9] The more consistent, the more persuasive. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

9

treatment relationship, extent of treatment relationship, and examining relationship)[10], (4) specialization[11], and (5) other factors.[12]  Of which, the two most important factors to considering persuasiveness are supportability and consistency.    *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D. N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  "At bottom, 'supportability' is an inward-facing concept, requiring the ALJ to evaluate how well a given medical opinion is supported by the strength of the opinion's own reasoning, while 'consistency' is an outward-facing concept, requiring the ALJ to evaluate how consistent a medical opinion is with other evidence in the record." *Terry v. Comm'r of Soc. Sec.*, No. 4:20-CV-618-SDJ, 2023 WL 2586304, at *5 (E.D. Tex. Mar. 21, 2023).

Under the revised rules for evidentiary evaluation, the ALJ is not required to assign specific evidentiary weight to opinions; the ALJ is only required to articulate how the ALJ considered the medical opinions and prior administrative medical findings by explaining how the ALJ considered the supportability and consistency factors in relation to these opinions and findings, along with the other factors as appropriate.  *See* 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2); 416.920c(a), (b)(1)-(2). In other words, "the ALJ must explain how he considered the "supportability" and "consistency"

---

[10] These factors will help determine the evaluator's level of knowledge regarding plaintiff's impairment and whether the evaluator has a longitudinal understanding of a plaintiff's impairment.  *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[11] A medical opinion from someone who has become a specialist through advanced training may be more persuasive than one from someone who is not a specialist.  *See* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4).

[12] "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *See* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

factors for a medical source's opinion," and "[t]he ALJ may—but is not required to—explain how

he considered the remaining factors." *Jacqueline L.*, 515 F. Supp. 3d at 8 (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)); *see also Steele v. Saul*, 520 F. Supp. 3d 1198, 1209 (D. Alaska

2021).

At issue is whether the ALJ's disregard of Mr. Carroll's opinion complies with the

requirements of adequately articulating the supportability and consistency factors. In the present

case, the ALJ noted Mr. Carroll's opinion was partially persuasive. (Dkt. No. 7 at 49). The ALJ

found Mr. Carroll's opinion that Plaintiff can handle her own funds persuasive and consistent with

Plaintiff's own testimony. *Id.* However, the ALJ found the rest of Mr. Carroll's opinion "not

functionally specific" and disregarded it. *Id.* Particularly, the ALJ disregarded: "the claimant has

the capacity to understand instructions that would be part of an entry-level work position, the pace

of the claimant's work would probably be adequate, and the claimant would have some minor

problems being able to interact with others in the workplace." *Id.* The ALJ also disregarded Mr.

Carroll's opinion that Plaintiff would have trouble handling the stress and pressure of learning a

new job, that she would have a hard time making it to work due to her depression, and that her

ability to persist at a new job would be questionable. *Id.*

The ALJ's only stated reason for rejecting Mr. Carroll's opinion was because it was "not

functionally specific." (Dkt. No. 7 at 49). The record is devoid of any explanation as to how the

ALJ considered the supportability and consistency of Mr. Carroll's opinion. The phrase

"functionally specific" does not provide a sufficient basis for a reasonable mind to conclude the

decision to reject this medical opinion was supported by substantial evidence. Although

substantial evidence is an extremely deferential standard, an ALJ must still provide a specific and

legitimate reason to reject the expert's opinion. On this record, such a reason was not provided.

Case 7:23-cv-00399   Document 11   Filed on 08/29/24 in TXSD   Page 12 of 18

### III. The ALJ's Consideration of Dr. Tovar's Opinion

At issue, again, is whether the ALJ sufficiently articulated how she considered the medical opinion by explaining the supportability and consistency factors, and if such explanation is supported by substantial evidence. *Jacqueline L.*, 515 F. Supp. 3d at 8 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). It is worthwhile to note the ALJ's role is to interpret all medical evidence to determine capacity to work. *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam). As the trier of fact, the ALJ has the important function of weighing competing evidence against other objective findings. *See Walker v. Barnhart*, 158 F. App'x 535, 536 (5th Cir. 2005). And when a medical expert's notes conflict with his own medical opinions, it may be reasonable for the ALJ to weigh the treatment notes against the expert's ultimate determination. *See Salmond v. Berryhill*, 892 F.3d 812, 818-19 (5th Cir. 2018).

The ALJ found Dr. Tovar's opinion partially persuasive. (Dkt. No 7 at 50). The ALJ accepted Dr. Tovar's opinion on the symptoms of Plaintiff, but disregarded the severity as described by Dr. Tovar. *Id.* Dr. Tovar opined Plaintiff had "marked limitations in [her] abilities to interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting." *Id.* As to supportability of this opinion, the ALJ explained, "the psychological and mental status consultative examination do[es] not support that the claimant is as limited in her abilities" as opined by Dr. Tovar. *Id.* As to consistency, the ALJ explained Dr. Tovar's opinion was "not consistent with a psychological consultative examination that the claimant previously had in which her concentration and attention seemed adequate, she maintained focus through the interview, and her memory was good." *Id.*

The ALJ's rejection of portions of Dr. Tovar's medical opinion was due to the contradictions between the record, namely Plaintiff's own account of her disability and Dr. Tovar's

and Mr. Carroll's notes at the psychological and mental status consultative examinations, with Dr.

Tovar's ultimate opinion.   In other words, the ALJ relied on Dr. Tovar's and Mr. Carroll's

treatment notes during their respective examinations, rather than on their ultimate opinion, in

finding Dr. Tovar's opinion only partially persuasive.  (Dkt. No. 7. at 50).  First, the ALJ noted

that during Dr. Tovar's evaluation, the Plaintiff was "cooperative throughout the evaluation, her

attitude was positive, and she answered all of the questions asked despite some distress." *Id.* at

50, 596 (Ex. No. 10F at 4).  The ALJ noted Plaintiff's low IQ score and low WRAT-5 score, but

discounted these scores because the Plaintiff was not wearing her glasses and was falling asleep

towards the end of the exam. *Id.* at 50, 597 (Ex. No. 10F at 9).  Finally, the ALJ discounted the

rest of Dr. Tovar's opinion based on Mr. Carroll's treatment notes, particularly noting that during

this examination Plaintiff's "concentration and attention seemed adequate, she maintained focus

throughout the interview, and her memory was good." *Id.* at 50, 472 (Ex. No. 3F at 5).

The ALJ weighed the evidence in the record as a whole and made determinations as to

what Plaintiff's capacity to work is, based on that evidence.  The undersigned notes it is careful

not to reweigh the evidence, but rather, ensure the ALJ properly justified her decision. *Whitehead*

*v. Colvin*, 820 F.3d 776, 782 (5th Cir. 2016).   On this record, it appears the ALJ properly

considered Dr. Tovar's medical opinion as to Plaintiff's impairments, and sufficiently explained

the consistency and supportability factors.  Notably, the ALJ explained what other evidence within

the record she based her decision on to find Dr. Tovar's opinion "partially persuasive."  Therefore,

there is substantial evidence to support the ALJ's decision to discount part of Dr. Tovar's opinion.

### IV. The ALJ's RFC Determination

Prior to step four of the sequential process, the ALJ must determine the claimant's residual

functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  At this time, the ALJ must

consider all impairments, regardless of severity. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

An individual's residual functional capacity is "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 F. App'x 491, 493 (5th Cir. 2006) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)); *see also* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). If an impairment does not meet an impairment listing in Appendix 1 of the regulations, the ALJ needs to continue through the sequential process and consider whether the plaintiff can meet the demands of past relevant work in their condition, and if not, if there is any other work the plaintiff can do considering their "remaining mental capacities reflected in terms of the occupational base, age, education, and work experience." SSR 85-15, 1985 WL 56857 at *4 (Jan. 1, 1985); 20 C.F.R. Pt. 4, Subprt. P, App. 1. As such, '[a]ny impairment-related limitations created by an individual's response to demands of work …must be reflected in the RFC assessment." *Id.; Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).

When determining the RFC, an ALJ considers descriptions provided by physicians and the claimant, alongside the claimant's overall credibility. *Hollis*, 837 F.2d at 1386. If an ALJ's decision states expressly that it was made "[a]fter careful consideration of all the evidence," and there is no reason or evidence to dispute his assertion, then the Fifth Circuit will not disturb the ALJ's conclusions. *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). Additionally, even if the court determines the evidence weighs heavily in favor of the plaintiff, a court must still affirm the Commissioner's findings if there is substantial evidence to support them. *Carry v. Heckler*,

14

750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton*, 697 F.2d at 592 and *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir. 1981)).  Nevertheless, the ALJ must properly assess a plaintiff's RFC in accordance with the applicable regulations and Social Security Rulings by considering all relevant evidence, including objective medical evidence, medical opinions, and Plaintiff's testimony.  *See* 20 C.F.R. §§ 404.1545-.1546, 416.945-.946.

In the present case, the ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations.  (Dkt. No. 7 at 40).  For instance, the employment could not be fast paced, have no public interactions, but could have occasional changes to work routine and some coworker and supervisor interaction.  *Id.* In reaching this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence."  *Id.*  The ALJ noted the record did not support that her conditions were debilitating.  *Id.* at 51.  The ALJ found the medically determinable impairments could reasonably be expected to cause the symptoms plaintiff alleged but the intensity, persistence, and limiting effects of such symptoms were not consistent with the medical evidence.  *Id.* at 41.

Particularly, the ALJ found the medical opinion of the state agency consultants not persuasive, because their opinion that Plaintiff's symptoms were non severe was not supported by the record, which showed persistent mental health symptoms "that more than minimally affect [Plaintiff's] ability to work."[13]  *Id.* at 49.  The ALJ also relied on Mr. Carroll's opinion that Plaintiff

---

[13] On October 19, 2017, Dr. Hamersma, the state agency consultant at the initial level, examined the record and concluded Plaintiff had no severe impairments. *See* Dkt. No. 7 at 124-27 (Ex. No. 2A). On November 17, 2017, Dr. Sullivan, the state agency consultant at the reconsideration level, after reexamining the record, affirmed Dr. Hamersma's opinion, and found Plaintiff did not have severe impairments. *See id.* at 130-47 (Ex. Nos. 5A, 6A). It appears the ALJ found these opinions unpersuasive based on the medical interviews and exams conducted by Woodland Centers and Tropical Texas Behavioral Health Centers, where the Plaintiff was actually seen, and reported symptoms consistent with a more severe impairment. *See id.* at 448-53, 454-66, 479-84, 485-98, 502-67, 582-87 (Ex. Nos. 1F, 2F, 5F, 6F, 7F, 9F).

could handle her own funds, as such opinion was supported by Plaintiff's testimony. *Id.* Further, the ALJ found Dr. Tovar's opinion partially persuasive, because the ALJ found such limitations were present, but the severity opined by Dr. Tovar was not supported by the record. *Id.* at 50. Finally, the ALJ found both state agency's medical consultant's opinion persuasive and found no physical impairments.[14] *Id.* In all, this led the ALJ to conclude that despite Plaintiff's subjective complaints, the examinations and Plaintiff's testimony, showed she was able to cook, manage money, and do basic activities of daily living without help, she had no psychiatric hospitalizations, and the record did not support her conditions were debilitating to the point of being unable to work. *Id.* at 51. The ALJ, thus, did take into consideration the medical evidence presented in reaching her conclusion of the Plaintiff's RFC. Although the ALJ rejected some and accepted other medical opinions, the mental RFC decision reached is sufficiently supported by the record, and the substantial evidence standard has been met contrary to Plaintiff's claim that said opinion was based upon the ALJ's own view without regard to the medical or consultant opinions.

## V. Prejudice

As noted above, the undersigned agrees with Plaintiff in that the ALJ failed to adequately evaluate Mr. Carroll's medical opinion by not explaining the "supportability" and "consistency" factors as required by 20 C.F.R. § 404.1520(c)(2). However, reversal is only warranted if the Plaintiff can demonstrate prejudice by the ALJ's error. *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012).

Unfortunately, Plaintiff cannot meet this burden. Plaintiff argues "[i]f the ALJ had accepted Mr. Carroll's opinions, based on the VE testimony, she would have concluded Ms. Tello

---

[14] Dr. Salmi found Plaintiff did not have any hearing issues. *See* Dkt. No. 7 at 112, 122 (Ex. Nos. 1A, 2A). At the reconsideration level, Dr. Fingar concluded Plaintiff did not suffer from any hearing loss. Dkt. No. 7 at 134-35 (Ex. No. 5A).

was disabled, and her failure to weigh those opinions therefore prejudiced Ms. Tello." (Dkt. No. 8 at 14). However, the ALJ's decision makes it clear that Mr. Carroll's opinion was indeed considered. Again, the ALJ found Mr. Carroll's opinion "partially persuasive", and such finding was due to the opinion not being "functionally specific." (Dkt. No. 7 at 49). Although this explanation is insufficient, Plaintiff fails to show how this error harmed her. As noted by the Fifth Circuit in *Miller v. Kijakazi*, "[Plaintiff] fails to show that if the ALJ had given further explanation, then she would have adopted" the medical opinions. No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (discussing harmless error and prejudice in the context of an ALJ's failure to explain how supportability and consistency factors were considered); *see also Terry*, 2023 WL 2586304, at *6-7. To make such a finding would require the undersigned to reweigh the evidence to show that Plaintiff was prejudiced by the ALJ's failure to explain, which it cannot do. *Miller*, 2023 WL 234773, at *4. As outlined in the last two sections, the ALJ did review and rely on medical opinions and consultant reports in determining RFC and whether or not Petitioner was disabled within the Social Security regulations and law. Thus, although the ALJ committed error, this error was harmless and does not warrant reversal.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law and based on the undersigned's conclusion that the ALJ's mental RFC determination was supported by substantial evidence, and that any error by the ALJ was harmless, the undersigned recommends Defendant's Cross-Motion for Summary Judgment (Dkt. No. 9) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 8) be **DENIED**.

17

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Counsel for Plaintiff and Defendant.

**DONE** at McAllen, Texas, this 29th day of August 2024.

Juan F. Alanis
United States Magistrate Judge